UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No.

YAESLIN RODRIGUEZ,

                Plaintiff,                              **COMPLAINT**

    - against -

OSCAR STONE CORP.,                          **PLAINTIFF DEMANDS**
                                                                  **A TRIAL BY JURY**

                Defendant.
------------------------------------------------------------------------X

       Yaeslin Rodriguez ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, against Oscar Stone Corp. ("Defendant"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the disability discrimination provision of: (i) **The Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, et seq. ("ADA"), (ii) the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); (iii) the disability discrimination provision of the **New York City Human Rights Law**, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL"); (iv) the failure to pay earned commissions provision of the **New York Labor Law**, § 191 *et seq.* ("NYLL"); (v) and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated** against on the basis of her **reasonable accommodation**, by **wrongfully terminating** Plaintiff from her employment.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

1

3. The Court has supplemental jurisdiction over the claims Plaintiff brings under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in accordance with 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of the State of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated May 14, 2025, concerning the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within ninety (90) days of receipt of said Notice of Right to Sue.

## PARTIES

8. At all times material, Plaintiff was and is a female and a resident of the State of New York.

9. At all times material, Plaintiff was and is a "person" and an "employee" of Defendant and entitled to protection as defined by the NYSHRL, the NYCHRL and the NYLL.

10. At all times material, Defendant was and is a domestic corporation organized and existing under the law of the State of New York and engaged in the jewelry industry, with its principal place of business located at 2384 Grand Concourse, Bronx, NY 10458.

11. At all times material, Plaintiff worked as a jewelry sales associate at Defendant's jewelry store, Oscar Stone NYC, located at 2356 Grand Concourse, Bronx, NY 10458.

12. At all times material, Plaintiff was employed by Defendant.

13. At all times material, Defendant was and is Plaintiff's "employer" under the ADA, the

NYSHRL, the NYCHRL and the NYLL.

14. At all times material, Defendant employed at least fifteen (15) or more employees.

15. Accordingly, at all relevant times herein, Defendant was and is an employer covered by the statutes referenced herein.

## MATERIAL FACTS

16. Plaintiff commenced her employment as a jewelry sales associate for Defendant on or about August 8, 2024.

17. Defendant is a jewelry company which sells jewelry and offers pawnbroker services. Upon information and belief, Defendant owns and/or operates four stores throughout the New York City area. At all times material, Plaintiff chiefly worked for the Oscar Stone NYC store located at 2356 Grand Concourse, Bronx, NY 10458 ("2356 Grand Concourse Store").

18. Throughout Plaintiff's employment with Defendant, her performance met or exceeded Defendant's reasonable expectations.

19. At the time of Plaintiff's hire, on or about August 7, 2024, Defendant informed her she would receive $20.00 per hour plus three percent (3%) commission on all of her gross jewelry sales for Defendant.

20. At all times material, Plaintiff typically worked approximately forty (40) hours per week for Defendant.

21. At all times material, Plaintiff worked under the supervision of 2356 Grand Concourse Store Manager, Gregory (Full Name Unknown) ("Gregory"), Company Manager, Wilber Izaguirre, Company Owner, Oscar Izaguirre, Sr., and Company Owner, Oscar Izaguirre, Jr.

22. Defendant initially planned on placing Plaintiff in a position working in their call center. However, recognizing her skill as a jewelry salesperson, Gregory promoted Plaintiff to a

jewelry sales associate position on her first day of work.

23. During Plaintiff's tenure working for Defendant, she immediately began making an impact for Defendant's business, selling an expensive pendant, rings, and other jewelry pieces for no less than $6,000 in gross sales. Plaintiff also began developing her book of business for Defendant, and was set to bring in more clients to the store to make additional sales.

24. Although Plaintiff was a determined and high energy salesperson, in or about August 2024, she developed a debilitating gastrointestinal system illness, which required her to go to the hospital to seek emergency medical treatment. Plaintiff's gastrointestinal system illness began suddenly causing her great pain in her abdominal region, causing her to use the bathroom frequently, and further resulting in great difficulty for her as it concerns her ability to eat, sleep, stand, breath, concentrate, think, communicate, and work, among other major life activities.

25. As she first began experiencing these severe symptoms, on August 27, 2024, at approximately 6:00 a.m., Plaintiff texted Gregory to inform him that she was feeling very unwell, but that she would "push through" and report to work for her shift later that morning. Apologetically, Plaintiff let Gregory know ahead of time that she may be experiencing low energy that day due to her feeling ill. In a careless manner, Gregory responded to this text by saying "It's ok. No pain no profit. Let's get it". Plaintiff still came to work that day because, as a relatively new employee, she was afraid of being fired from her job if she could not make it into work.

26. That day, Plaintiff struggled through pain in her sides and went to the bathroom multiple times to cry, because she was in such a considerable degree of discomfort.

27. After the 2356 Grand Concourse Store closed that evening, Plaintiff went to her home where the pain continued to worsen.

28. At or around 3:00 a.m. of August 28, 2024, Plaintiff was in such a weakened state that her father had to carry her out of her bed to bring her to Montefiore Hospital Emergency Room.

29. Plaintiff was kept by her physicians in the Emergency Room for testing and observation through the entirety of August 28, 2024 from the early morning hours well into the evening that same day. During her hospital visit, Plaintiff learned that she had an intestinal blockage, which would require medication and further treatment. Additionally, Plaintiff was told by her treating physician that she would need to stay out of work for the next five (5) days.

30. Because Plaintiff was incapacitated, and undergoing intensive testing and observation for the entirety of August 28, 2024, she was unable to obtain her cell phone to contact her work earlier in the day to inform Defendant, prior to her work shift, that she was unable to report to work due to her condition.

31. Instead, Plaintiff had to wait until she was sufficiently recovered and had access to her phone to text Gregory, at 11:13 p.m. on August 28, 2024, that she had been in the Emergency Room all day and night. In Plaintiff's text message to Gregory, she explained her medical absence to her supervisor. In response, Gregory coldly replied "It's ok. So what's your status as of now," further asking, "And will you able to come into work tomorrow?"

32. Under pressure from Defendant to report to work, Plaintiff told Gregory she would be back at work the next day, in contravention of her doctor's explicit instructions to stay out of work the next day.

33. Plaintiff also informed Gregory she would obtain a doctor's note from her ER physicians, which she would give to Defendant when she returned.

34. In response to this, Gregory replied "It's ok. I excused you for today from work so no further explanation required. Just come in on time and make some dang money."

5

35. Unfortunately, Plaintiff's pain returned in the early morning hours of August 29, 2024, and so she called Gregory in the morning of that day, prior to the commencement of her work shift, to inform him that she was unable to come into work that day because of her medical condition and requested an additional day off to recover as a reasonable accommodation. Gregory granted Plaintiff's reasonable accommodation request to take off from work on August 29, 2024, so that she could further recuperate from her medical condition.

36. In the morning of August 30, 2024, Plaintiff reported to work at the 2356 Grand Concourse Store, despite her doctor's recommendation that she remain out of work for the following five (5) days. Plaintiff reported to work anyway, because she was afraid of Defendant firing her for needing to take off more days of work to treat her chronic illness. Upon reporting to work, Plaintiff handed Gregory her doctor's note at his request. Within the presence of Plaintiff, Gregory called Plaintiff's physician to seek confirmation of her illness. Upon information and belief, Gregory called and spoke to Plaintiff's medical treatment provider who confirmed her ER visit and need for bedrest over the next five (5) days.

37. Despite receiving this information, once Gregory got off the phone with Plaintiff's doctor, he immediately terminated her employment, telling Plaintiff she was terminated because she was a "no-call, no-show" for two consecutive days of work and for "poor performance."

38. Plaintiff attempted to explain to Gregory that he had already excused her from work twice and that she had just provided him with a doctor's note which required Plaintiff to stay out of work for five (5) days. Gregory ignored Plaintiff's pleas and instead compelled Plaintiff to wait in the 2356 Grand Concourse Store for two hours to receive the wages owed to her, as Gregory laughed with her coworkers while she cried waiting to be paid. Ultimately, Gregory told Plaintiff she would have to go speak with Defendant's Human Resources Department at the

        main store located at 2384 Grand Concourse, Bronx, NY 10458, to receive her wages.

39. When Plaintiff arrived at Defendant's main store to speak with their Human Resources Department, Plaintiff told Defendant's HR Representative Ashley (Full Name Unknown) ("Ashley"), that she had been fired and explained to her what occurred. Ashley responded that she disagreed with Gregory's decision.

40. On or about September 2, 2024, Plaintiff received a call from Company Manager Wilber Izaguirre, who informed her he was on vacation but he learned of her termination from Gregory. Wilber Izaguirre said that Gregory told him and Company Owners' Oscar Izaguirre, Sr. and Oscar Izaguirre, Jr., that he had heard from anonymous sources that Plaintiff was allegedly a "scammer" prior to commencing work for Defendant so he terminated her based on that allegation.

41. This allegation was merely a poorly concealed pretextual reason crafted by Gregory to justify his termination of Plaintiff from her employment due to her needing to take off work to treat her medical condition. In her call with Wilber Izaguirre, Plaintiff asked him if they could rehire her at a different location, and while Wilber Izaguirre stated to Plaintiff he would talk to Defendant's ownership about this, he did not want to interfere with Gregory's decision making and he encouraged Plaintiff to continue looking for work elsewhere. Upon information and belief, Defendant had no intention of reinstating Plaintiff to her job.

42. On or about September 10, 2024, Gregory called Plaintiff after Plaintiff informed him she had been receiving strange and harassing direct messages on Instagram from an account purporting to be an employee of Defendant named "Vanessa," Plaintiff's former coworker. During their phone call conversation, Gregory avoided answering Plaintiff's comments and questions about his unlawful decision to terminate Plaintiff from her employment due to her medical condition.

43. In addition to the discriminatory conduct stated above, Defendant failed to pay Plaintiff wages and commissions that she earned.

44. During the interview process, Plaintiff was promised payment in the amount of $20.00 per hour and commissions of on all gross sales she made.

45. Plaintiff's first pay date of August 10, 2024 came and went without payment. On or about August 17, 2024, one week after the date she was supposed to be paid, Defendant's Store Manager Gregory informed Plaintiff that she would only be paid that day at a rate of $18.00 per hour, not the $20.00 per hour that Defendant had promised Plaintiff on August 7, 2024.

46. In the weeks that Plaintiff worked for Defendant up to her unlawful termination, Plaintiff also earned commissions that were never paid to her for selling jewelry for Defendant. Plaintiff estimates selling upwards of $6,000 in jewelry, for which she never received any commission payments.

47. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

48. As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, traumatized, and emotionally distressed.

49. As a result of Defendant's actions, Plaintiff has suffered depression, anxiety, loss of self-esteem, loss of confidence, irritability, anger, emotional numbness, difficulty sleeping, and strains in her personal relationships.

50. Also, as a result of Defendant's actions, Plaintiff has suffered physical manifestations of anxiety and depression, severe emotional distress, feelings of self-doubt, lowered confidence, lowered self-esteem, and has cried multiple times.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, benefits, and other compensation which such

employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

52. The unlawful discriminatory actions of Defendant constitutes malicious, willful, and wanton violations of the ADA, NYSHRL, NYCHRL, and the NYLL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

### AS A *FIRST* CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACTION

53. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

54. Plaintiff asserts that Defendant violated the ADA.

55. The ADA prohibits discrimination against any qualified individual on the basis of disability, the perception that she is disabled, or a record of impairment.

56. Additionally, the ADA requires a covered entity to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.

57. As described above, Defendant discriminated against Plaintiff in violation of the ADA by wrongfully terminating her from her employment with Defendant after initially granting her reasonable accommodation request for two day of medical leave to treat her disabling medical condition.

58. Plaintiff had and/or Defendant perceived that she had a physical or mental impairment that substantially limits one or more of his major life activities.

59. As a result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, worsened anxiety, humiliation, embarrassment, stress, loss of self-esteem

and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

60. As such, Plaintiff has been damages as set forth herein and is entitled to the maximum award of damages under this law.

## AS A *SECOND* CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER THE NYSHRL

61. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

62. New York State Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, **disability**, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

(Emphasis added).

63. As described herein, Defendant engaged in unlawful employment practices prohibited by the NYSHRL, by discriminating against Plaintiff on the basis of her disability by unlawfully terminating Plaintiff from her from her employment.

64. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

65. As a result of the unlawful discriminatory conduct of the Defendant in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss

of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

66. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**AS A *THIRD* CAUSE OF ACTION**
**FOR DISABILITY DISCRIMINATION UNDER THE NYCHRL**

67. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

68. New York City Administrative Code § 8-107(1)(a) provides that it shall be an unlawful discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

(Emphasis added).

69. As described herein, Defendant engaged in unlawful employment practices prohibited by the NYCHRL, by discriminating against Plaintiff on the basis of her disability by unlawfully terminating Plaintiff from her employment.

70. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

71. As a result of the unlawful discriminatory conduct of Defendant in violation of NYCHRL,

Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

72. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**AS A *FOURTH* CAUSE OF ACTION**
**<u>FAILURE TO PAY EARNED WAGES AND COMMISSIONS IN VIOLATION OF NYLL § 191(c)</u>**

73. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

74. NYLL § 191(c) provides that:

> A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last of the month following the month in which they are earned; provided however, that if monthly or more frequent payment of wages, salary, drawing accounts or commissions are substantial, then additional compensation earned, including but not limited to extra or incentive earnings, bonuses and special payments, may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan.

75. Pursuant to the terms of Plaintiff's employment with Defendants, Defendants were to pay Plaintiff the aforementioned earned wages and commissions.

76. Defendants routinely failed to do so and did not receive any of the wages and commissions which she was entitled to receive.

77. As a result of Defendants' unlawful conduct, Plaintiff is entitled to recover her unpaid wages

and commissions, an equal amount in liquidated damages, pre- and post-judgment interest and attorneys' fees and costs.

## JURY DEMAND

78. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA, NYSHRL and the NYCHRL, in that Defendant discriminated against and retaliated against Plaintiff on the basis of her disability by unlawfully terminating Plaintiff from her employment;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff liquidated damages on her NYLL claim;

F. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: Garden City, New York
       June 16, 2025

                                  **PHILLIPS & ASSOCIATES,**
                                  **ATTORNEYS AT LAW, PLLC**

by:    /s/
       Joshua Friedman

Ian N. Piasecki
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
jfriedman@tpglaws.com
ipiasecki@tpglaws.com